17 Cal.Rptr. 595]

[Crim. No. 7888.   Second Dist., Div. Three.   Dec. 13, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES ROBERT CRUMBEY, Defendant and Appellant.

James Robert Crumbey, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

SHINN, P. J.—Defendant and one Gullick were accused by information of the crimes of assault with a deadly weapon with intent to commit murder, burglary and kidnaping for the purpose of robbery. A jury found them guilty of assault with a deadly weapon and burglary. The defendants appealed from the judgment and order denying them a new trial. The judgments and orders denying defendants a new trial were reversed. (*People* v. *Gullick,* 55 Cal.2d 540 [11 Cal.Rptr. 566, 360 P.2d 62].)

Thereafter, the defendants were accused by an amended information of the crimes of assault with a deadly weapon and burglary. Trial by jury was duly waived. Defendants were found guilty as charged. Probation reports were ordered. Crumbey's motion for a new trial was denied; he was denied probation and sentenced to the state prison. He appeals in propria persona from the judgment and the order. Gullick has not appealed. Crumbey applied to this court for appointment of counsel. After reading the record and determining that the appeal was wholly without merit, the application was denied. Crumbey has filed a brief in propria persona.

There was evidence of the following facts. Theodore Grant testified that he had formerly been employed as a porter by the Boys Market in Highland Park. It was the duty of the porter to make a telephone report on the hour to one of the other Boys Markets. He had known Crumbey for several years. Crumbey approached him with a proposal to burglarize the market and Grant agreed to assist Crumbey and a third man to be selected by Crumbey in the burglary. At night he showed Crumbey how the market could be entered. Shortly thereafter, Crumbey introduced Grant to Gullick who had recently been released from jail and the three discussed the burglary. At a time agreed upon for the crime they met and Grant at that time told the other two that he would take no part in the burglary. He left the vicinity but met the defendants some days later, at which time they told him he should have been with them in the burglary.

James W. Robinson testified that he was employed as a porter by the market. February 15, 1959, at about 9:10 p. m., after the store was closed, Crumbey and Gullick broke into the market. Gullick flourished a knife and threatened to kill Robinson, who grabbed the knife and sustained a severely cut hand. He was badly beaten, dragged to the rear of the store and tied up. Crumbey and Gullick took $849 in cash from the cashier's cage. When Robinson failed to check in by telephone

as he should have done, the police were alerted, came to the market, released Robinson and learned of the burglary.

Some six months later, Grant, Crumbey and Gullick were arrested. In a line-up of prisoners, including other Negroes, Robinson recognized Grant, Crumbey and Gullick and identified the latter two as the burglars. In the trial Crumbey admitted acquaintanceship with Grant but both he and Gullick denied having participated in the burglary.

Both Grant and Robinson had testified at the first trial. The court had failed to instruct of its own motion that the testimony of Grant should be viewed with distrust and would require corroboration. The Supreme Court by majority opinion (55 Cal.2d 540 [11 Cal.Rptr. 566, 360 P.2d 62]) reversed the judgments and orders upon the ground that failure to so instruct was error and the identification of the defendants by Robinson was confused and contradictory. It was held that ''[I]t is 'reasonably probable that a result more favorable' to defendants 'would have been reached in the absence of the error.' ''

In reading the testimony of Robinson at the later trial we do not find that it was materially either contradictory or confusing. He identified the two defendants as they sat in court and identified Gullick as the one who had the knife. He related the threatening remarks that were made to him. When he grabbed the knife the blade broke from the handle and the blade remained in his hand. He was tied up with a clothes line. Crumbey told Gullick not to kill him because he looked so much like his (Crumbey's) father. Robinson told them he had to make a security call and they said ''You won't make them tonight.'' Two of his fingers that were cut are utterly useless. In a police line-up there were 10 or 12 Caucasions, Mexicans and Negroes. He recognized Grant as an acquaintance. In the line-up he also recognized Crumbey and Gullick stating ''that is the only ones I knew.'' He testified he was certain that Crumbey and Gullick were the two men who had struggled with him. In the line-up the defendants spoke. Questioned whether he recognized their voices he answered ''Oh, yes; voice and face, yes. . . . Yes. I would know them—a hundred years from today, I would know them.'' On cross-examination he testified that he would never forget the date; it was ''February 15, 10 after 9, Sunday evening''; although he was nervous and shaking at the time he remembered clearly the things that were said; he did not lose consciousness; he only told the police that one of the men was

heavier and taller than the other and that it looked like one had a beard; he wasn't sure. He was asked: "Q. The fact of the matter is, Mr. Robinson, you didn't look too good at these men who came into that store that night, did you? A. Sure. I couldn't help but look at them, right in their face. Q. You didn't get an impression in your own mind of what these two men looked like, did you? A. Yes. Q. You got a clear impression, did you? A. Any time you beat me up, I will see you; any time you hurt me." Gullick had threatened to kill him and said "If I kill you, then you won't be able to identify me." Questioned whether he decided to take a good look at the men so he would be able to identify them, he answered "Well, in my opinion about it, I didn't care if I didn't never see them no more." The police had given him two big books of "mug shots." He did not identify any one. When the police called him they did not tell him that they had caught the burglars; shown his testimony at the first trial, he did not remember whether he had testified that the police did tell him they had caught the burglars. In the police line-up there were only three colored men that he knew, "I knew one, I worked with him, and the others beat me up." There were more than three colored men in the line-up. There was no question in his mind at the time that the defendants were the ones who committed the crime, "There wasn't no guessing problem about it." When he used the word "black-out" in the former trial he meant that he was out of breath, and not that he was unconscious.

The trial court appointed Joseph M. Rosen under section 987a, Penal Code, to represent both defendants. Presumably he was appointed to serve at public expense because he had previously been appointed by the Supreme Court on the former appeal. Defendants received competent and vigorous representation during the trial. The record discloses no error during the trial in the admission or exclusion of evidence. Although before he gave his testimony Grant, the accomplice, was granted immunity, the trial court, of course, weighed it under applicable rules of law. In our opinion the court could not reasonably have failed to find the defendants guilty. The prophecy of Mr. Justice Schauer in his dissent on the former appeal has become a reality. He said, with the concurrence of Mr. Justice McComb, "To reverse for a new trial in the circumstances here is, I believe, to disregard the positive admonition of article VI, section 4½, of the California Constitution and to work a miscarriage of justice directly upon the people

of this state (as well as a waste of money) and eventually upon the defendants who, on the same evidence should almost certainly be again convicted and, after the fruitless delay and expense caused by the majority's action herein, finally have to expiate the judgments in any event." (*People* v. *Gullick, supra,* 55 Cal.2d 540, 552-553.)

The judgment and order are affirmed.

Vallée, J., concurred.

Ford, J., concurred in the judgment.